# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1326

———————————————

Northern Oil and Gas, Inc.

*Plaintiff - Appellant*

v.

EOG Resources, Inc.

*Defendant - Appellee*

———————————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

———————————————

Submitted: May 12, 2020
Filed: July 27, 2020

———————————————

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

———————————————

SMITH, Chief Judge.

Northern Oil and Gas, Inc. ("Northern") filed this quiet-title action in federal district court against EOG Resources, Inc. (EOG) regarding their competing interests in mineral rights in North Dakota. Both companies lease oil and gas rights, and their

lessors litigated a similar matter in state court. The district court found that Northern was in privity[1] with its lessor and held that the lessors' case barred Northern's claims.

Under principles of res judicata, litigants in privity are bound by a prior judgment controlling an issue in subsequent litigation. In North Dakota, "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication." *Gerrity Bakken, LLC v. Oasis Petroleum N. Am., LLC*, 915 N.W.2d 677, 684 (N.D. 2018). Because Northern acquired its lease before the lessors' case, no privity exists between Northern and its lessor. Therefore, we reverse.

## I. *Background*

In the 1950s and 1960s, Axel Anderson and Henry Johnson engaged in a series of transactions involving land and mineral interests. These culminated in a 1962 warranty deed in which Anderson conveyed certain mineral interests to Johnson but reserved 1/4 for himself. By 2008, Anderson's interest had passed to Nancy Finkle, and Johnson's interest had passed to his descendants ("the Johnsons"). That year, Finkle entered an oil and gas lease with Northern's predecessor, which assigned most of its interest to Northern a few months later.[2] The Johnsons entered oil and gas leases with EOG.

---

[1]Privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *Privity*, Black's Law Dictionary (11th ed. 2019). "Privity exists if a person is so identified in interest with another that he represents the same legal right." *Ungar v. N.D. State Univ.*, 721 N.W.2d 16, 21 (N.D. 2006) (cleaned up).

[2]The Finkle/Northern lease and subsequent assignment were both made a matter of public record by filing in Mountrail County, North Dakota, several years prior to the commencement of the North Dakota quiet-title action.

In 2011, the Johnsons filed a quiet-title action against Finkle in North Dakota state court.[3] Northern and EOG were not made parties to nor given notice of that litigation. The state court found in the Johnsons' favor, terminating Finkle's interest in the land at issue.

Prior to the state-court action, Northern and EOG cooperated in the development of the land. But two years after the case concluded, EOG informed Northern that it would no longer do so; it was "reversing" previously paid revenues and invoiced well costs. In response, Northern filed this quiet-title action in federal district court. EOG moved to dismiss, arguing that the state-court judgment against Finkle barred Northern's quiet-title action by operation of res judicata.

Under res judicata, the state-court judgment could only preclude Northern's claim if it was in privity with Finkle. Northern argued that, under North Dakota law, privity does not apply where a mineral lessee acquired its interest before the earlier litigation's commencement. The district court rejected that argument. Instead it applied a two-pronged test, which looked to whether Northern's interests (1) were aligned with Finkle's and (2) were protected by the state-court proceedings. The court determined that Finkle adequately represented Northern's interest. Therefore, Northern was in privity with Finkle. The court granted EOG's motion to dismiss.

---

[3]The case turned on the *Duhig* rule, *see Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940), which North Dakota has adopted. *See Goodall v. Monson*, 893 N.W.2d 774, 779 (N.D. 2017). Under that rule, an overconveyance—where the grantor conveys and reserves greater mineral interests than he owns—does not create an ambiguity in the deed. *Id.* Instead, the grantor bears the risk of title loss. *Id.* The state trial court found that Anderson did not own all of the minerals he purported to convey and reserve in the 1962 warranty deed. *See Johnson v. Finkle*, 837 N.W.2d 132, 134 (N.D. 2013) (affirming the state trial court). Because Anderson bore the risk of title loss, his successor's interest in the subject lands—the 1/4 reservation—was wiped out. The court also declined to reform the deed based on other transactions.

A few months later, the Supreme Court of North Dakota decided *Gerrity Bakken*, 915 N.W.2d at 685, a factually similar case. Gerrity Bakken leased mineral interests from certain lessors. *Id.* at 680. Those lessors filed suit against other parties ("the defendants") for the underlying mineral rights but failed to name Gerrity Bakken in the suit. *Id.* at 680–81. A state trial court ruled in the defendants' favor. *Id.* at 681. Shortly thereafter, Gerrity Bakken brought a quiet-title action against the defendants. *Id.* The defendants argued that, because of the privity doctrine, the earlier judgment precluded Gerrity Bakken's suit. *Id.* at 681, 684. The court rejected that argument and held that "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication." *Id.* at 684. "[B]ecause Gerrity Bakken and its predecessors acquired their interest . . . two years before the 2013 quiet title action, the privity doctrine does not apply." *Id.*

Based on the decision in *Gerrity Bakken*, Northern moved for reconsideration. The district court denied the motion. The court noted that North Dakota's privity standard allows consideration of fundamental fairness. *See Kulczyk v. Tioga Ready Mix Co.*, 902 N.W.2d 485, 488 (N.D. 2017). *Gerrity Bakken*'s holding did not address fundamental fairness, and the district court believed the holding was not one that "should . . . be applied so rigidly as to defeat the ends of justice or to work an injustice." Order Granting Def.'s Mot. to Dismiss at 11, *N. Oil & Gas Co. v. EOG Resources, Inc.*, No. 1:16-cv-00388-DLH-CSM (D.N.D. Jan. 15, 2019), ECF No. 100 (quoting *Riverwood Com. Park L.L.C. v. Standard Oil Co.*, 729 N.W.2d 101, 107 (N.D. 2007)). In other words, courts are free to consider the timing of the lease as well as fundamental fairness. Because Northern's interests were (1) aligned with Finkle's and (2) protected by the state court proceedings, the court found that fundamental fairness counseled binding Northern to the quiet-title judgment.

## II. *Discussion*

Northern argues that the district court erred in holding that it was in privity with Finkle and that res judicata barred its quiet-title action. "The law of the forum that rendered the first judgment"—here, North Dakota—"controls the res judicata analysis." *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (internal quotation omitted). "We review a district court's interpretation of state law de novo. In interpreting state law, we are bound by the decisions of the state's highest court." *Cty. of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 950 (8th Cir. 2014) (internal citation omitted). "When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the same issue before us." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (cleaned up).

Under North Dakota law, res judicata applies only if Northern was in privity with Finkle. *See Ungar*, 721 N.W.2d at 20–21. Typically "privity exists if a person is so identified in interest with another that he represents the same legal right." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D. 1992) (internal quotation omitted).[4] Northern contends that "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication." *Gerrity Bakken*, 915 N.W.2d at 684. In other words, it argues that it is not bound by Finkle's quiet-title judgment because it acquired its lease in 2008, three years before the state litigation began.

*Gerrity Bakken* sets forth current North Dakota law on the subject of privity and the application of res judicata. There, in two 1960's conveyances, a property owner conveyed a greater mineral interest than he possessed. *Id.* at 680. In 2013, this fault came to light, and the buyers' successors filed a quiet-title action, which also named "all other persons unknown claiming any estate or interest in, or lien or encumbrance

---

[4]Though collateral estoppel and res judicata are not the same, their privity inquiry is. *See Ungar*, 721 N.W.2d at 21.

upon, the property described in the complaint." *Id.* at 680–81 (cleaned up). The plaintiffs did not name Gerrity Bakken, who had entered an oil and gas lease two years before the case was filed with a putative owner of the disputed property. *Id.* at 680. The trial court found for the opponents of Gerrity Bakken's lessors. *Id.* at 681. Shortly thereafter, Gerrity Bakken filed a separate quiet-title action against the prevailing party. *Id.* The defendants to Gerrity Bakken's suit argued that the case should be barred because it constituted "an impermissible collateral attack on the [earlier] quiet title judgment." *Id.* at 684. Even with the complaint's broad naming of parties, the court found that Gerrity Bakken was not a party to the action or in privity with its lessors. *Id.* As for the latter, it stated that "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication." *Id.* Thus, "because Gerrity Bakken and its predecessors acquired their interest from [its lessors] in 2011, two years before the 2013 quiet title action, the privity doctrine does not apply." *Id.*

Applying *Gerrity Bakken* to the instant facts, Northern was not in privity with Finkle. Like Gerrity Bakken, Northern entered a lease before the state quiet-title action commenced. And like Gerrity Bakken, Northern's lessor lost its quiet-title action. The North Dakota Supreme Court expressly declined to apply the privity doctrine on facts closely resembling this case. *See id.* at 684–85. In short, because "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication," *id.* at 684, we hold that the privity doctrine does not bar Northern's action under controlling North Dakota law.

The district court distinguished *Gerrity Bakken* and concluded that it is not a hard-and-fast rule prohibiting consideration of other factors. The court noted that *Gerrity Bakken* did not address fundamental fairness, which counsels against reversal. But even if *Gerrity Bakken*'s failure to consider fundamental fairness renders it not "directly on point, our role is to predict how the state supreme court would rule if faced with the same issue before us." *Blankenship*, 601 F.3d at 856 (cleaned up). *Gerrity*

-6-

*Bakken*, a case with striking similarity, gives us a convincing clue for making that prediction.

To be sure, *Stetson v. Investors Oil, Inc.*, 176 N.W.2d 643 (N.D. 1970) provides some support for the fundamental fairness argument. There, an individual filed a suit against an oil prospecting company for unpaid services on an oil well and won. *Id.* at 644. His trustee then brought a garnishment action, which set up the garnishment of oil runs and an execution sale of a leasehold interest. *Id.* at 644–45. The owners of the prospecting company and financiers who had purchased participating units in an oil venture well before the garnishment action ("the defendants") brought a quiet-title action to prevent the garnishment. *Id.* at 645. The defendants argued that their rights were not foreclosed by the earlier suit because they were not a party to the original judgment; their agent, the company, was. *Id.* at 647–48. The court rejected that argument and applied res judicata to bind them to the judgment. *Id.* at 651. It noted that the defendants admitted that they participated in and received numerous communications regarding the underlying action. *Id.* at 650–51. Under those circumstances, equity commanded an "expanded" rule of privity to bind the owners to the prior action. *Id.* at 651–52.

*Stetson*, however, is materially distinguishable: Northern did not admit that it (1) participated in the prior action or (2) had any communications regarding the prior action. Indeed, it appears that North Dakota courts have never found it equitable to apply res judicata where the third party (1) acquired its interest prior to the proceeding and (2) was not involved in the proceeding. *See Bismark Pub. Sch. Dist. v. Hirsch*, 136 N.W.2d 449, 454 (N.D. 1965) (finding a prior quiet-title action, which decided title to chattel attached to land, did not prevent the land's buyer from arguing he had title to the chattel because he acquired his interest before the quiet-title action); *Hull v. Rolfsrud*, 65 N.W.2d 94, 98 (N.D. 1954) (finding a probate proceeding did not affect the claim of an individual who acquired his interest to the property in the probate proceedings before the proceedings commenced).

A recent decision further weakens the proposition that fundamental fairness alone alters the timing component of *Gerrity Bakken*'s holding. In *Great Plains Royalty Corp. v. Earl Schwartz Co.*, parties argued over ownership interests in assets. 927 N.W.2d 880, 883–84 (N.D. 2019). The plaintiff argued that res judicata barred some of the defendants' arguments because the assets were involved in an earlier bankruptcy proceeding. *Id.* at 884–85. One of the defendants was not a party to the bankruptcy proceeding but had acquired its interest from a party who was, so the plaintiff argued the former was in privity with the latter. *Id.* at 888. In its privity analysis, the North Dakota Supreme Court referenced fundamental fairness. *Id.* But the court found that it could not apply privity because the relevant defendant acquired its interest before the bankruptcy proceeding. *Id.* at 889. In short, even after noting fundamental fairness, the North Dakota Supreme Court applied the *Gerrity Bakken* rule. The court considered fundamental fairness but declined to apply it in a way that undermined the *Gerrity Bakken* rule.[5] Thus, we predict that North Dakota would conclude that fundamental fairness does not overcome *Gerrity Bakken* in this case.

EOG offers other arguments, but they too are unavailing. Specifically, it claims that other rules of privity apply. For instance, it argues that North Dakota has indicated that a party is in privity where it holds its interest subordinate to a party involved in an earlier action. *See Hull*, 65 N.W.2d at 98 ("In order to make a man a privy to an action . . . he must hold property subordinately." (internal quotation omitted)). The argument would conclude that Northern, as a lessee, was in privity with Finkle, a lessor. Notably, EOG does not provide a case where a North Dakota court actually found a party in privity because it possessed a subordinate interest. Also, in *Gerrity Bakken*, the lessee was not in privity even though its interest was subordinate. In short, though it includes references to the standard, case law does not suggest that North Dakota courts would apply the subordinate-interest rule on these facts.

---

[5]To the district court's credit, *Great Plains* was decided after it issued its ruling.

EOG also argues that privity applies because Finkle adequately represented Northern in the state quite-title action. This argument draws heavily on *Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) (finding that the denial of a friend's FOIA request did not bar another friend's identical FOIA request where there was no evidence the latter "controlled, financed, participated in, or even had notice of [the] earlier suit"). But *Taylor*, which dealt with the application of federal law, is not instructive here, where we are tasked with divining North Dakota law. *See Laase*, 638 F.3d at 856. And even if North Dakota courts were to apply that rule, Finkle did not adequately represent Northern's interest. "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum . . . [1] the party understood herself to be acting in a representative capacity or [2] the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900. EOG has not shown that Finkle understood herself to be operating in Northern's interest.[6] It also has not pointed to any "special procedures" that the state court used to protect Northern's interest. *Taylor*, 553 U.S. at 897–98.[7] So even if a North Dakota court were to disregard *Gerrity Bakken* and consider if Finkle adequately represented Northern's interest, we do not believe it would find that she did.[8]

---

[6]In a separate motion, EOG asks us to take judicial notice of affidavits that it claims show that Finkle understood herself to be operating in such a capacity. It asks us to accept the contents as true, and Northern contests those affidavits. "[J]udicial notice is inappropriate" when documents are offered "for the truth of the matters within them and inferences to be drawn from them" and the opposing party disputes those matters. *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 n.4 (8th Cir. 2015) (internal quotation omitted). We deny the motion.

[7]EOG argues that the state court proceedings alone served to protect Northern's interest. But the Court's use of the phrase "special procedures" throughout *Taylor* suggests that the prior proceedings must involve something "special," that is, something more than standard court proceedings. *See id.*

[8]Northern and EOG also offer arguments regarding ownership interests and evidence supporting the quiet-title action. Because those issues were not passed on by

In short, we believe the North Dakota courts would follow the rule pronounced in *Gerrity Bakken*. And applying that rule here, privity—and thus res judicata—does not apply to Northern because it obtained its property interest three years before the state quiet-title action commenced.

### III. *Conclusion*

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

_____

the district court, we decline to address them for the first time here. *See BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 549 (8th Cir. 2018) ("When it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court." (internal quotation omitted)).